IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHRIS SKLODOWSKI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL[1] | : | NO. 18-10447 |

O P I N I O N

JACOB P. HART                                DATE: 3/10/20
UNITED STATES MAGISTRATE JUDGE

Chris Sklodowski brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded. As set forth below, Sklodowski's Request for Review will be denied and judgment granted in favor of the Commissioner.

I.      Factual and Procedural Background

Sklodowski was born on April 14, 1963. Record at 140. He completed high school. Record at 154. He has worked as a press machine operator and a warehouse worker. Id. On March 23, 2015, Sklodowski filed an application for DIB, in which he alleged disability as of September 15, 2014, as a result of pain in his lower back, arms, neck and hips, and weakness and numbness in his legs, arms and hands. Record at 140, 153.

Sklodowski's application for benefits was denied initially and upon reconsideration. Record at 60, 71. He then sought *de novo* review by an Administrative Law Judge ("ALJ").

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. Pr. 25(d); and see 42 USC §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security … .").

record at 86.  A hearing took place in this case on June 21, 2017.  Record at 28.  On October 23, 2017, however, the ALJ issued a written decision denying relief.  Record at 12.

The Appeals Council denied Sklodowski's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner.  Record at 1.  Sklodowski then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. '423(d)(1).  As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i)  At the first step, we consider your work activity if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in ' 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the

      duration requirement, we will find that you are disabled.  (iv).  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v).  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.      The ALJ's Decision and Sklodowski's Request for Review

      In his decision, the ALJ determined that Sklodowski suffered from the severe impairments of degenerative disc disease and obesity.  Record at 17.  He also found that Sklodowski suffered from diabetes and hypertension, but that they were not severe.  Record at 17-18.  He found that no impairment or combination of impairments met or medically equaled a listed impairment.  Record at 18.

      The ALJ determined that Sklodowski retained the residual functional capacity ("RFC") to perform light work, except that he was limited to only occasional postural maneuvers, and would be off task 10% of the workday.  Record at 18-19.  Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Sklodowski was capable of working as a machine operator, inspector of packages, or assembler.  Record at 23.  He decided, therefore, that Sklodowski was not disabled.  Id.

      In his Request for Review, Sklodowski argues that the ALJ erred in finding that his degenerative disc disease did not meet or medically equal a listed disorder.  He also maintains that the ALJ erred in failing to credit the report of his general practitioner, Fuad Ahmad MD.  Thirdly, he argues that the Commissioner wrongly rejected evidence that he medically required a cane to walk.  Finally, he argues that the ALJ erred in failing to credit his subjective complaints of pain.

3

IV.    Discussion

A.    The Listings

Initially, Sklodowski argued that the ALJ wrongly determined that his degenerative disc disease did not meet Listing 1.04, which pertains to disorders of the spine. He quoted the text of the Listing, which sets forth three ways it can be met as §1.04A, §1.04B, and §1.0C, but he did not discuss the requirements of any of the three subsections, nor did he specify which one he claimed to meet. In his reply memorandum, however, Sklodowski appears to have narrowed his argument to §1.04A.

To meet Listing 1.04A, a claimant must demonstrate:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 CFR Pt. 404, Subpart P, App. 1 at §1.04A. Notably, these requirements are set forth in the conjunctive, meaning that all are necessary to meet the listing.

Sklodowski has not shown the presence of nerve root compression. As the Commissioner points out, an MRI conducted on February 25, 2015, showed disc herniation with stenosis at L4-5, "but no definite nerve root compromise." Record at 429.[2] Sklodowski has argued that the "severe mass effect" found at L3-4 in his April 22, 2016, MRI was equivalent to nerve root compression. Record at 489. However, he has not offered any medical evidence that this is the case: mass effect at L3-4 was also noted in the February 25, 2015, MRI report, but "nerve root compromise" was not mentioned at that level. Record at 429.

---

[2] The Commissioner actually misquoted this report as stating: "no definite nerve root compression." Commissioner's Brief at 18. However, it appears that nerve root compression is a high grade of nerve root compromise, so that there could be no compression where no compromise is found. Http://ncbi.nlm.nih.gov/pmc/articles/PMC5240479/. (Visited March 4, 2020).

4

Further, there is no evidence that Sklodowski suffered from the muscle weakness necessary to show motor loss under §1.04A. Independent examining physician Justin Fernando, MD, observed "no evidence of muscle atrophy in the lower extremities" and full strength bilaterally on May 28, 2015. Record at 400, 403.

Clearly, Sklodowski has not shown that he meets the criteria for Listing 1.04A. Nor is there a treatment note in the record indicating the presence of arachnoiditis as required by §1.04B, or the pseudoclaudication required by §1.04C.

Sklodowski also argues that, even if he did not meet Listing 1.04, the ALJ erred in failing to obtain a medical opinion as to whether his condition medically equaled that listing. However, because matching or equaling a listing at stage three results in an automatic finding of disability, the listings are strictly construed against claimants. Sullivan v. Zebley, 493 U.S. 521, 530-532 (1990). Although an ALJ is required to consider whether a claimant's impairments equal a listed impairment, it is the claimant's burden to show "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Id.; Lee v. Astrue, Civ. A. No. 06-5167, 2007 WL 1101281 at *4 (E.D. Pa. Apr. 12, 2007). It is not enough to argue that the overall functional impact of a claimant's impairments is as severe as that of a listed impairment. Sullivan, supra.

Sklodowski made no such showing to the ALJ, and did not even raise the topic of equivalence. Even here, in a one-paragraph argument, Sklodowski does no more than suggest that the combination of his impairments "could very well" support a finding of equivalence. Brief at 12. This is obviously inadequate to meet the burden described by the United States Supreme Court in Sullivan. The ALJ did not, therefore, err in failing to obtain a medical expert opinion on this topic.

B.        Dr. Ahmad's Report

Dr. Ahmad, Sklodowski's general practitioner, submitted a Medial Source Statement dated March 28, 2016. Record at 464-7. In it, he diagnosed Sklodowski with lumbar herniation at L4-5 with stenosis, adding "see also cervical MRI," but without specifying a cervical condition. Record at 464. He described Sklodowski's symptoms as lower back pain radiating to both legs, with numbness and tingling when standing or walking, and a loss of feeling in the right foot. Id.

According to Dr. Ahmad, Sklodowski could walk "0" blocks without rest or severe pain, and could sit for ten minutes, and stand for five minutes, before needing to get up. Record at 465. In total, he could sit and stand/walk for a combined period of less than two hours in an eight-hour workday. Id. He could rarely lift ten less than ten pounds, and could never lift ten pounds or more. Record at 466. He could never twist, stoop, crouch or climb ladders, although he could "rarely" climb stairs. Id. Further he could use his hands and fingers for only 5% of an eight-hour workday, except that he could reach his arms in front of his body for 10% of the time. Id. Dr. Ahmad also opined that Sklodowski could not tolerate even a low-stress job because of his pain, and would be off task 25% or more of the time in a workday. Record at 467.

The ALJ gave Dr. Ahmad's report little weight, writing that it was inconsistent with the medical evidence. Record at 21. He specifically cited the November 24, 2015, examination by neurologist Fawad Mian, MD, who found Sklodowski to have full strength in all four extremities, with normal bulk and tone, and a normal gait, as well as normal reflexes. Record at 457. Orthopedic progress notes from 2015 prepared by St. Joseph's Medical Center also found 5/5 motor function, and intact sensation except for the dorsum of the right foot. Record 443, 447, 452.

6

Further, as the ALJ discussed elsewhere in his decision, consulting examiner Dr. Fernando noted a normal gait and station on May 28, 2015, with the ability to heel and toe-walk, and to squat fully. Record at 20, 400. Functioning in both hands, both wrists, and fingers was normal. Id. According to Dr. Fernando, Sklodowski had no muscle atrophy, and normal reflexes except for in his left Achilles tendon. Id. He wrote that, aside from the absent Achilles heel reflex, "all other aspects of the examination was [*sic*] normal enough that it did not imply any etiology for the residual symptoms." Record at 401.

The ALJ also relied on the findings of reviewing agency physicians Howard Goldblas, MD, and Mary McLarnon, MD. Record at 21. Drs. Goldblas and McLarnon agreed that Sklodowski could perform light work. Record at 56-7, 69-70.

There is no merit, therefore, to Sklodowski's complaint that the ALJ did not give an adequate explanation of the evidentiary basis for his decision. Clearly, the ALJ's evaluation of Dr. Ahmad's statement was supported by substantial evidence.

C.     The Use of a Cane

Sklodowski testified that he used a cane whenever he walked, and that it was prescribed by Dr. Ahmad. Record at 41. In response to a question from counsel, the vocational expert testified that the need to use a cane would preclude Sklodowski from performing work at the light exertional level. Record at 48. Sklodowski maintains that the ALJ erred in failing to include the need for a cane when walking in his RFC assessment.

However, obtaining an RFC restriction to the use of a cane is not as simple as claiming that one is used. Social Security Ruling 96-9p specifies: "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a

7

hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed … ."

The Court of Appeals for the Third Circuit has found, although in a non-precedential case, that even the existence of a prescription for a cane, and multiple mentions of the use of a cane, is not adequate to meet the criteria of SSR 96-9p for a finding of medical necessity. Howze v. Barnhart, 53 Fed. Appx. 218, 222 (3d Cir. 2002). Citing Howze, the District Court for the District of New Jersey found that a claimant with a prescription for a cane had not shown medical necessity where other medical reports indicated that his gait was normal, and the client conceded he could walk two to three blocks without a cane. Rodriguez v. Commissioner of Social Security, Civ. A. No. 16-2807, 2017 WL 935442 at **7-8 (D.N.J. Mar. 9, 2017).

Unlike Howze and Rodriguez, Sklodowski has not shown that his cane was actually prescribed. Dr. Ahmad noted several times that Sklodowski appeared at his appointment using a cane, and he checked off in his Medical Source Statement that Sklodowski needed an assistive device. Record at 466, 473, 476, 482. Nevertheless, there is no notation of a prescription. There is no evidence of another doctor prescribing a cane. The ALJ noted this in his decision. Record at 21.

Further, although Sklodowski did not admit that he could walk without his cane like Rodriguez, he too was found to have a normal gait upon physical examination. Record at 400 (Dr. Fernando), 457 (Dr. Mian). Finally, there is no discussion in Dr. Ahmed's notes or elsewhere of the medical necessity for an assistive device. On this record, it cannot be said that the ALJ erred in failing to include the need for a cane in his RFC assessment.

8

D.     <u>Pain</u>

Sklodowski testified that he was disabled by powerful burning pain in his legs, lower back, and neck, as well as weakness in his hands. Record at 35-6. The ALJ recognized this in his decision. Record at 19. The ALJ also reviewed Sklodowski's testimony that he had difficulty walking, relied on his wife to help him dress, and could only stand for five minutes, sit for ten minutes, walk for two blocks with a cane, and lift half a gallon of milk. <u>Id</u>. The ALJ concluded, however, that the medical and other evidence of record was not entirely consistent with Sklodowski's statements "for the reasons explained in this decision." <u>Id</u>.

Sklodowski argues that the ALJ failed to set forth a "thorough discussion of the objective medical and other evidence with respect to [his] allegations of pain", as required by the Court of Appeals for the Third Circuit in <u>Schaudeck v. Commissioner of Social Security</u>, 181 F.3d 429, 433 (3d Cir. 1999). However, as discussed above, the ALJ considered the opinions of Drs. Ahmad, Fernando, Mian, Goldblas and McLarnon. Record at 20-21. He also discussed Sklodowski's back surgery, his physical therapy treatment, and MRI results. Record at 19, 20.

The only evidence Sklodowski points to as missing from the ALJ's decision is the fact that he took narcotic pain medication. This is not so significant an omission as to require remand. An ALJ is not required to discuss every factor mentioned in 20 CFR §404.1529(c)(3). <u>Jackson v. Berryhill</u>, Civ. A. No. 18-591, 2019 WL 1417244 (D.N.J. Mar. 29, 2019); <u>Sloan v. Commissioner of Social Security</u>, Civ. A. No. 18-1154, 2019 WL 989763 at *7 (D.N.J. Feb. 28, 2019); <u>Mason v. Colvin</u>, Civ. A. No. 15-1861, 2015 WL 6739108 at *6 (D.N.J. Nov. 3, 2015); <u>Green v. Colvin</u>, Civ. A. No. 13-3463, 2014 WL 3105037 at *7 (D.N.J. June 30, 2014).

Clearly, the ALJ acknowledged that Sklodowski suffered from some degree of pain. Otherwise, he would not have limited Sklodowski to less than the full range of light work, where he had previously been performing work at the medium exertional range. Record at 46-7. However, the ALJ adequately explained in his decision that substantial evidence supported a determination that Sklodowski was not completely disabled by pain.

Other evidence which was not highlighted by the ALJ also supports this conclusion. As the Commissioner pointed out in his response, Sklodowski indicated in the Function Report he completed on March 31, 2015, that his condition imposed no limitation on his ability to dress, bathe, care for his hair, or otherwise engage in personal care. Record at 171. He also indicated that he left the house twice per day, either walking or driving a car. Record at 172-3. He shopped for groceries twice per week. Record at 173. He attended church regularly. Record at 174. This form was completed over two years prior to Sklodowski's hearing before the ALJ, but it was obviously submitted after the date on which he alleges he became unable to work.

V.    Conclusion

In accordance with the above discussion, I conclude that the decision of the ALJ should be affirmed, and judgment entered in favor of the Commissioner.

BY THE COURT:

/s/ Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE